(Decided 17th February, 1874.)

JOHN HEWES and M. W. HEWES, trading as HEWES & Cò., *vs.* JAMES H. JORDAN.

*Acceptance and Receipt of goods under a contract of Sale, within the 17th Section of the Statute of Frauds.*

The defendants verbally agreed to purchase of the plaintiff 3148 pounds of butter grease at eight cents per pound. At the time of the bargain, the butter grease was in the cellar of the plaintiff in packages, and was seen by the agent of the defendants, and could have been examined both by the defendants and their agent before its removal; but they did not do so, except that the agent removed the loose heading of some of the packages and inspected the top of those packages, but did not use an auger or trier, or in any manner probe into the packages to ascertain the condition of the grease. On the same day of the sale, the defendants by written order directed the plaintiff to deliver the grease to a drayman, by whom it was taken to the store of the defendants and there received. The defendants upon further inspection, objected to accepting the grease in fulfilment of the contract, upon the ground that the grease was not merchantable, because of

an undue quantity of salt which was alleged to be contained in it, and of such objection due notice was given to the plaintiff. HELD:

That there was evidence from which the jury might have found both acceptance and actual receipt of the goods within the meaning of the 17th section of the Statute of Frauds.

To render a contract for the sale of goods binding within the meaning of the 17th section of the Statute of Frauds (29 *Car. II, ch.* 3,) which declares that "no contract for the sale of any goods * * * * shall be allowed to be good, except the buyer shall accept part of the goods so sold, and actually receive the same," the vendee must accept and actually receive part of the goods. There may be an actual receipt without an acceptance, and an acceptance without a receipt; but if both these acts concur, with the intention of the parties that the vendee shall take possession of the goods under the contract as owner, then the latter must be taken as having made a final election to accept the goods, or such part of them as he may have actually received, as his property, and, at the same time, to assent to their being such as will gratify the contract; and acceptance and receipt being thus complete to bind the contract, the vendee cannot afterward withdraw his acceptance and reject the goods, except it be on the ground of fraud.

The delivery of the goods to the intended purchaser, and the unpacking of them by him, are not a sufficient acceptance, if it appear that he has taken them and had them in his possession for no greater time than was reasonably necessary to enable him to examine their quantity and quality, and to declare his approval or disapproval of them.

APPEAL from the Court of Common Pleas.

This was an action of *assumpsit* by the appellee to recover from the appellants the price of certain butter grease, alleged to have been sold and delivered by the former to the latter. Pleas, never indebted and never promised. Issues joined. Evidence was offered by the plaintiff tending to prove a verbal sale by him of 3148 pounds of butter grease to the defendants at eight cents a pound. There was a conflict of testimony as to the making of an express warranty of the merchantable quality of the grease. There was no proof of part payment or any earnest to bind the bargain, nor of any contract in writing; nor was there any memorandum signed by the

defendants, or any one in their behalf, other than a written order from them, dated on the day of sale, directing the-plaintiff to deliver the grease to their drayman; the grease was accordingly delivered and taken to the store of the defendants    The case is further stated in the opinion of the Court.

*Exception.*——The defendants offered the following prayers:

1. If the jury shall find from the evidence that there never was any delivery and acceptance by the defendants of the said butter grease; and if they shall further find that there was no part payment made, or earnest given to bind the alleged contract of sale of said butter grease; and shall further find that there was no note or memorandum of said contract in writing, signed by the defendants or their agent, thereunto lawfully authorized, then their verdict must be for the defendants.

2. If the jury believe that the plaintiff, before and at the time of the alleged contract of sale, referred to in this case, *represented* that the butter grease in question was all right, free from dirt and salt, as testified to by the witness Jas. E. Hewes, and that relying upon *such representations* the defendants agreed to purchase the same at the price of eight cents per pound, and that the said butter grease was not in fact all right, free from salt and dirt, but on the contrary was unmerchantable, and that immediately upon the discovery of its actual condition the defendants notified the plaintiff thereof, and tendered the said butter grease to him, and never accepted the same as a compliance with the terms of the said alleged contract, then the plaintiff is not entitled to recover.

3. That in this case there is no evidence of part payment or earnest to bind the bargain, and no memorandum in writing signed by the defendants, or their agent, duly authorized, and that therefore the plaintiff is not entitled

to recover, unless the jury believe that the butter grease or some thereof was delivered by the plaintiff to the defendants, and was accepted by the defendants, and that in order to constitute an acceptance, so as to bring the case within the provisions of the Statute of Frauds there must have been an actual acceptance by the defendants, with an intention of taking possession as owners.

4. That in this case even although the jury may find from the evidence that there was both a delivery of the butter grease to the defendants and an acceptance by them thereof, with an intention of taking possession thereof as owners, yet if the jury find that the said butter grease was guaranteed by the plaintiff to be a good merchantable article, and was not, in fact, a merchantable article, then the defendants, immediately upon the discovery thereof, had a right to rescind the contract; and if the jury further find that the defendants did promptly notify the plaintiff of their refusal to accept the said grease as a compliance with the said alleged contract, then the plaintiff is not entitled to recover.

5. That no acceptance under the Statute of Frauds is sufficient, which is other than the ultimate acceptance, and such as completely affirms the contract.

The Court, (GAREY, J.,) granted the second and fourth of these prayers, and rejected the others, and in their stead gave an instruction which will be found in the opinion of this Court. The defendants excepted to the rejection of their prayers and to the instruction given by the Court, and the verdict and judgment being against them, they appealed.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and ROBINSON, J.

*Charles Poe* and *John P. Poe,* for the appellants.

The single question now before this Court is, as to the character of the receipt and acceptance required by the

Statute of Frauds ; and is one which can only be decided by an examination of the authorities. It will be found, that the view of the law embodied in the defendants' rejected prayers is the correct one. The appellants' third prayer is in the precise language of *Clark's Admr. vs. Marriott,* 9 *Gill,* 335 ; see also, *Nicholle vs. Plume,* 1 *Car. & Payne,* 272 ; *Kent vs. Huskinson,* 3 *B. & P.,* 233 ; *Howe vs. Palmer,* 3 *Barn. & Ald.,* 321 ; *Tempest vs. Fitzgerald,* 3 *Barn. & Ald.,* 680; *Carter vs. Touissant,* 5 *Barn. & Cres.,* 855 ; *Phillips vs. Bistolli,* 2 *Barn. & Cres.,* 511 ; *Smith vs. Surman,* 9 *Barn. & Cres.,* 561 ; *Norman vs Phillips,* 14 *M. & W.,* 277 ; *Acebal vs. Levy,* 10 *Bing.,* 376 ; *Morton vs. Tibbetts,* 15 *Q B.,* 428, (14 *Jurist,* 669); *Elliott vs. Thomas,* 3 *M. & W.,* 170 ; *Hunt. vs Hecht,* 8 *Exchequer,* 814 ; *Coombs vs. Bristol & Exeter R. R Co ,* 3 *H. & N.,* 510, 513 ; *Castle vs. Sworder,* 6 *H. & N.,* 832 ; *Maberley vs. Sheppard,* 10 *Bing.,* 99, 101 ; *Shindler vs. Houston,* 1 *Comstock,* 261 ; *Caulkins vs. Hellman,* 47 *New York,* 449 ; *Benjamin on Sales,* 110 ; *Blackburn on Sales,* 22 *and* 23 ; *Outwater vs. Dodge,* 6 *Wend.,* 400 ; *Lloyd vs. Wright,* 25 *Georgia,* 215 ; *Shepherd vs. Pressey,* 32 *N. H.,* 49 ; 2 *Taylor on Evid.,* sec. 957.

*J. V. L. Findlay,* for the appellee.

The defendants' first prayer was properly rejected.

1st. Because it left to the jury, without explanation or definition, the question of "*delivery and acceptance,*" not only a question of law, (*Clark vs. Marriott,* 9 *Gill,* 336,) but, as appears by the appellants' brief, one of nice and accurate critical discrimination, requiring the digesting of a large mass of not harmonious authorities. *Rule four respecting Appeals,* 29 *Md.*

2d. Because it left to the jury the legal sufficiency of the written memorandum.

3d. Because it tended to mislead the jury by suggesting a legal doubt as to the question of "*delivery,*"

fully proved by all the testimony on both sides, and with respect to which there was not a *scintilla* of negative evidence to support that portion of the prayer,

The defendant's first and third prayers were properly rejected, because on the mooted question of "acceptance" the whole ground was covered, and that most favorably to the appellants, by the Court's instructions, including as part thereof those granted on the prayers of the appellants.

The defendants' third and fifth prayers were properly rejected, as reviving an obsolete doctrine, long since exploded, by *Morton vs. Tibbett,* 69 *E. C. L.,* 429, *cited in Jones vs. Mechanics' Bank,* 29 *Md.,* 296; and re-affirmed by *Cusack vs. Robinson,* 101 *E. C. L.,* 297, and *Currie vs. Anderson,* 105 *E. C. L.,* 598; see also *Kershaw vs. Ogden,* 3 *Hurl. & Coll.,* 717.

From the prayers of the defendants which were granted, it will be seen that the lines of distinction between such an acceptance as will merely let in parol evidence of the contract under the Statute of Frauds, and a final acceptance precluding defences under the contract, were perspicuously and with scientific precision drawn for the defendants, who had the full benefit of the discrimination *in their favor* before the jury. Obviously the appellants in these prayers were allowed the very widest latitude of defence short of collision with the doctrine *"caveat emptor,"* which was in fact grazed, if not hit by the second prayer. *Benj. on Sales,* 453.

If the prayers granted cover the defendants' case and give them the full benefit of their legal defence, the judgment will not be reversed, although the rejected prayers were correct, or although error may be found in the instructions given by the Court. *Kershner vs. Kershner's Lessee,* 36 *Md.,* 334; *Staylor vs. Ball,* 24 *Md.,* 201. Nor will this Court reverse upon the defendants' appeal, where it can be seen that they will not be benefited by a

new trial. *Benson vs. Atwood,* 13 *Md.,* 57 ; 2 *Md. Digest,* 23, *No.* 131.

ALVEY, J., delivered the opinion of the Court.

The question presented in this case, arises under the 17th section of the Statute of 29 *Car. II, chap.* 3, known as the Statute of Frauds, and is as to what will amount to a sufficient acceptance and receipt of goods sold, in order to render the contract binding, where there is nothing given in earnest, or in part payment of the price, and there has been no note or memorandum in writing of the bargain made and signed as the Statute requires.

The bargain in question, was in reference to 3,148 lbs. of butter grease, alleged to have been sold and delivered to the appellants by the appellee, on the 24th of May, 1872.

The butter grease was, at the time of the bargain, in the cellar of the appellee in packages, and was seen by the agent of the appellants, and both the appellants and their agent could have examined the same before its removal, but did not do so, except that the agent removed the loose heading of some of the packages, and inspected the top of those packages, but did not use any auger or trier, or in any manner probe into the packages to ascertain the condition of the grease. On the same day of the sale, the appellants, by written order, directed the appellee to deliver the grease to a drayman, by whom it was taken to the store of the appellants and there received. The appellants, upon further inspection, objected to accepting the grease in fulfilment of the contract, upon the ground, that the grease was not merchantable, because of an undue quantity of salt which was alleged to be contained in it ; and of such objection due notice was given the appellee.

At the trial, the appellants offered several prayers to the Court, some of which were granted, but the first,

third and fifth were rejected, and in lieu thereof the Court instructed the jury, that unless the appellants received and accepted the goods, or some portion thereof, the verdict should be for them; but such receipt and acceptance need not be absolute and unqualified, but might be such as would not preclude the appellants from questioning the quantity or quality of the goods, or in any way disputing that the contract had been fully performed by the appellee.

The Statute declares that "*no contract* for the sale of any goods, wares or merchandises, for the price of £10 sterling or upwards, *shall be allowed to be good*, except— 1. The buyer shall *accept* part of the goods so sold, *and actually receive the same.* 2. Or give something in earnest to bind the bargain, or in part payment. 3. Or that some note or memorandum in writing of the said bargain be made and signed by the parties to be charged by such contract, or their agents thereunto lawfully authorized." It is the first of these conditions only that is here involved; and in respect to the question presented, it is exclusively as to the proper construction of that particular clause of the Statute.

In the case of *Clarke vs. Marriott*, 9 *Gill*, 331, this Court decided, by quoting with approval from 2 *Starkie on Ev.*, 490, that in order to satisfy the Statute, there must be a delivery of the goods with intent *to vest the right of possession* in the vendee, and there *must be an actual acceptance by the latter*, with intent to take possession as owner. This proposition, quoted from *Starkie*, is said by this Court, in *Jones vs. Mechanics' Bank*, 29 *Md.*, 293, to be an accurate statement of the acts and intents required of the respective parties, in order to make the contract binding and effectual.

From the plain meaning of the terms of the Statute itself, independent of all authority, the concurrence of two distinct acts on the part of the vendee, would seem

to be required; he must accept, and he must actually receive part of the goods, in order to render the contract binding on him. There may be an actual receipt without any acceptance, and there may be an acceptance without any receipt. But if both these acts concur, with the intention of the parties that the vendee shall take possession of the goods under the contract as owner, then the latter must be taken as having made a final election to accept the goods, or such part of them as he may have actually received, as his property, and, at the same time, assent to their being such as will gratify the contract; and acceptance and receipt being thus complete, to bind the contract, the vendee cannot afterwards withdraw his acceptance and reject the goods, except it be on the ground of fraud. So long, however, says Mr. Justice BLACKBURN, in his work on Sales, "as the buyer can, without self-contradiction, declare that the goods are not to be taken in fulfilment of the contract, he has not accepted them. And it is immaterial whether his refusal to take the goods be reasonable or not. If he refuses the goods, assigning grounds false or frivolous, or assigning no reasons at all, it is still clear that he does not accept the goods, and the question is not whether he *ought* to accept, but whether he *has* accepted them. The question of acceptance or not is a question as to what was the intention of the buyer, as signified by his outward acts.

"The receipt of part of the goods is the taking possession of them. When the seller gives to the buyer the actual control of the goods, and the buyer accepts such control, he has actually received them. Such a receipt is often evidence of an acceptance, but it is not the same thing; indeed, the receipt by the buyer may be, and often is, for the express purpose of seeing whether he will accept or not." *Blackb. on Sales*, 22, 23. The delivery, therefore, of the goods to the intended purchaser, and

the unpacking of them by him, are not sufficient, if it appears that he has taken them and had them in his possession for no greater time than was reasonably necessary to enable him to examine their quantity and quality, and to declare his approval or disapproval of them. *Curtis vs. Pugh*, 10 *Adol. & Ellis, N. S.*, 111; *Lucy vs. Montflet*, 5 *H. & N.*, 233.

That the acceptance and actual receipt of the goods sold, or some part of them, by the vendee, to gratify the Statute, must be intended by the parties to effect a final and complete change of property in the goods so actually received, under the contract, would seem to be clear; and without going at large into the numerous cases upon the subject, we may state the result of them by citing a passage from the last edition of *Taylor's Work on Evidence, sec.* 957, in which the author says, "that each of the two terms (acceptance and receipt,) has a distinct and separate meaning; that a compliance with both requisites is necessary to satisfy the Statute; that an acceptance and receipt of *part* of the goods will be as operative as an acceptance and receipt of the whole; that in cases relating to the purchase of *specific* goods, the acceptance may precede the receipt as well as follow it, or be contemporaneous with it; that an agent authorized to receive goods is not consequently authorized to accept them; that the receipt, which itself implies delivery, must be such as will preclude the vendor from retaining any lien on the goods, and that the acceptance and receipt together must be such as will preclude the purchaser from objecting to their quantity or quality. Indeed, the broad question, which must be submitted as one of fact to the jury, is, whether the circumstances prove a delivery by the vendor, and an acceptance and actual receipt by the vendee, intended by *both parties* to have the effect of transferring the right of possession from the one to the other." For the support of these pro-

positions numerous authorities are cited. See also 2 *Kent's Com.*, *p.* 495, and *Caulkins vs. Hellman*, 47 *N. Y.*, 449.

Opposed to the general proposition, that there is no such actual acceptance as the Statute contemplates, so long as the vendee continues to have the right to object to the quantity or quality of the goods, we have the judgment of Lord Campbell, in the case of *Morton vs. Tibbett*, 15 *Q. B.*, 428. The facts of that case were these: The defendant purchased wheat of the plaintiff by sample, and directed that the bulk should be delivered on the next morning to a carrier named by himself, who was to carry it to the market town of W., and the defendant himself took the sample away with him. On the next morning the bulk was delivered to the carrier, and the defendant re-sold it at W., on that day, by the same sample. The carrier conveyed the wheat by order of the defendant, who had never seen it, to the sub-vendee, who rejected it as not corresponding with the sample; and the defendant, on notice thereof, repudiated his contract with the plaintiff on the same ground. And on this state of facts it was held by the Court of Queen's Bench, that there was evidence to warrant the jury in finding an acceptance and actual receipt of the wheat by the defendant, so as to gratify the 17th section of the Statute of Frauds;—a decision that would appear to be sustainable upon the ground that, as the defendant had taken upon himself to exercise dominion over the wheat, and dealt with it in a manner wholly inconsistent with the right of property being in the vendor, those facts of themselves furnished evidence to justify the jury in finding that the defendant had accepted the wheat and actually received the same. Lord CAMPBELL, however, in the course of his very elaborate judgment, maintained what the case did not really require to be maintained, that the acceptance contemplated by the Statute is, in all cases, to precede, or at any rate to be contemporaneous with, the actual

receipt of the goods, and not a subsequent act; *that there may be an acceptance and receipt within the Statute, without the purchaser having examined the goods, or done anything to preclude him from contending that they do not correspond with the contract;* and that the acceptance to let in parol evidence of the contract is a different acceptance from that which affords conclusive evidence of the contract having been fulfilled.

Now, it may be readily conceded, that the question, whether there has been, in any particular case, such acceptance and actual receipt of a part of the goods as will bind the contract, may be quite different and distinct from that as to whether the contract has been fulfilled in respect to quantity and quality of the *residue* of the goods, where the vendee has had no opportunity of examining the goods that may be offered in fulfilment of the contract, and where he has done nothing to preclude himself from the exercise of the right to object that they do not correspond with those actually received by him. The effect of the acceptance and actual receipt of part of the goods, however small, is to prove the contract of sale, and it is not inconsistent with this, that the vendee should have the right, with respect to the *residue* of the goods when offered in fulfilment of the contract, to object that they are not such in quantity and quality, as the contract requires; and in such case, the question in dispute can only be determined by the aid of parol evidence. But, in all cases, where the goods bargained for, have been accepted and *actually received* by the vendee, he is thereby precluded, in the absence of fraud, from objecting that they do not correspond with the contract. Any other construction would certainly tend to let in all the evils that were intended to be excluded by the particular provision of the Statute; and hence, the proposition maintained by Lord CAMPBELL, in *Morton vs. Tibbett*, that there may be an acceptance and receipt within the Statute,

without the purchaser having examined the goods, or done any thing to preclude him from contending that they do not correspond with the contract, has found but partial favor with the judges of Westminster-Hall. Some of those judges have openly expressed their dissent from it; and while it may be taken as the established construction of the Statute by the *Queen's Bench*, it has failed to receive the sanction of the Court of Exchequer. *Hunt vs. Hecht*, 8 *Exch.*, 814; *Coombs vs. Bristol & Exeter R. Co.*, 3 *H. & N.*, 510; *Benjamin on Sales*, (2d *Ed.*,) 118, 120; See also the recent case of *Smith vs. Hudson*, 6 *B. & S.*, 431.

As we have seen, the act of acceptance is not confined to any particular order of time in reference to the actual receipt of the goods. On the contrary, acceptance may precede, as in cases where the vendee has inspected and approved the specific goods purchased, as well as be contemporaneous with, or subsequent to, the actual receipt of the goods. This was decided in the case of *Cusack vs. Robinson*, 1 *B. & S.*, 299. And in the present case, we think there was evidence from which the jury might have found both acceptance and actual receipt of the goods, within the meaning of the Statute. *Kershaw vs. Ogden*, 3 *Hurl. & Colt.*, 717. But it follows from what we have said that the instruction of the Court, given in lieu of the appellants' rejected prayers, was erroneous; and we think the Court was also in error in not granting the appellants' third prayer. Their first and fifth prayers were open to objection, because they furnished no proper or clear definition of acceptance, such as would be intelligible and a safe guide to the jury.

It is contended, however, that, notwithstanding there was error committed in the instruction given, and in the refusal to grant the third prayer of the appellants, yet as they obtained all the law to which they were entitled in their second and fourth prayers, which were granted,

they were not injured by the error of the Court, and therefore the judgment ought not to be reversed. But in this we do not agree. By the Court's instruction, the law embraced in the appellants' granted prayers was qualified, and must have been so intended, and it is but fair to conclude that it was so understood by the jury. Otherwise it would be difficult to conjecture which instruction was regarded by the jury in arriving at their verdict.

*Judgment reversed, and
new trial awarded.*

(Decided 17th February, 1874.)