# WILLIAM KARWACKI

## vs.

## GEORGE HOLTSBERG ET AL.

*Sale of Goods—Requirement of Statute—Unsigned Order—*
*Acceptance of Goods—Evidence—Instructions.*

In a written order for goods, without binding effect as a contract because not signed by the intending purchaser, the words, "this order is not subject to cancellation or return," if to be considered in determining the rights of the same parties on an oral sale of the goods, effected by their shipment and receipt, cannot be given the effect of prescribing the time within which the goods were to be returned if not satisfactory.          p. 104

After a contract has been made for the sale of goods, conditions contained in the invoices accompanying the shipment of the goods cannot control as regards the right to return the goods.
                                                                p. 104

Under Code, art. 83, sec. 25, an oral sale of goods of the value of fifty dollars or upward, accompanied by an unsigned order for the goods, is made enforceable against the purchaser by the acceptance, not of the order, but of the goods.          p. 105

Upon the receipt of goods sold by sample, the purchaser is entitled to retain them for a time reasonably necessary to enable him to examine their quality and quantity, before returning them, and is not limited to any prescribed time.          p. 105

In an action for the price of goods shipped by plaintiffs to defendant, *held* that the question of the acceptance of the goods by the latter, as dispensing with the necessity of a signed memorandum of the contract, should have been submitted to the jury.
                                                                p. 106

In an action for the price of goods orally sold, a prayer submitted by defendant, that if the jury find that "the defendant did not accept the goods, that is to say, that the defendant did not, either before or after delivery of the goods, express by

words or conduct his assent to becoming the owner of the goods," their verdict must be for the defendant, was not erroneous because it did not include the acts of defendant's daughter, who acted in his behalf in connection with the sale and return of the goods, that she was his agent being practically conceded. p. 106

In an action for the price of goods, sold by oral contract, which defendant claimed the right to return, evidence that plaintiffs, if they had accepted the return of the goods, would have had difficulty in selling them at a fair price, because this was after a holiday, was inadmissible, such a case not falling within the exception in Code, art. 83, sec. 25, subsec. 2, to the requirements of subsection 1, as to contracts for the sale of goods of the value of fifty dollars or upward. p. 107

Though a question asked of defendant's daughter, his agent, as to whether she signed the order for the goods, for the price of which the suit was brought, was improperly excluded, such exclusion was harmless, as her failure to sign it was shown by other evidence. p. 107

*Decided August 3rd, 1923.*

Appeal from the Baltimore City Court (STUMP, J.).

Action by George Holtsberg and Hyman S. Berkman, co-partners trading as Holtsberg & Berkman, against William Karwacki, trading as William Karwacki & Sons, for the price of goods sold. From a judgment for plaintiffs, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*John A. Farley* and *Herbert Levy,* with whom were *Coady & Farley* on the brief, for the appellant.

*Lewis W. Lake,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by the appellees, manufacturers of children's coats, in the City of New York, against the appellant William Karwacki, trading as William Karwacki & Sons, a retailer of such goods, in the City of Baltimore.

On Monday, the twenty-ninth day of March, 1920, Sylvan H. Spear, the salesman of the appellees, called at appellant's place of business, and while there an agreement was reached by which the appellant, through Frances Karwacki, his daughter and duly authorized agent, agreed to purchase of the appellees, and the appellees, through their salesman, agreed to sell unto the appellant, a number of children's coats.

The salesman at the time wrote an order for the purchase and sale of said goods and handed a copy of it to Frances Karwacki, though neither it nor the original order was ever signed by the appellant or by her on his behalf.

The order, which was upon a printed blank used by Spear in taking orders, had printed therein these words:

"Examine this order Carefully, see that the Prices and Terms are Correct, as no changes will be made at time of settlement.

"This Order is not subject to Cancellation or return."

In addition thereto the salesman wrote in the order the name and address of the appellant, to whom the goods were to be shipped, and the number of the coats, their lot numbers, sizes and prices.

The order was sent at once to the appellees with directions to ship promptly the goods by parcel post, that the appellant might get them for the Easter trade, Easter then being only a short while off.

Upon the receipt of the order by the appellees in New York on the 30th day of March, the day after it was taken by their salesman, the appellees on the same day shipped a part of

the goods and, on the second day thereafter, shipped the balance.

The goods reached the appellant on the first and second days of April. The packages containing the coats were at once opened upon the receipt of them, and the coats examined, and Frances Karwacki, acting for her father, finding them inferior, as she claims, both in quality and in work, to those ordered, the goods were, on the 19th day of April following, returned by the appellant to the appellees.

The appellees, however, refused to receive them, and after some correspondence between the parties, a suit was brought by the appellees in which they recovered judgment against the appellant for the price of the goods. It was from that judgment that the appeal in this case was taken.

The salesman of the appellees, who took the order, was not at the time of the trial in the employ of the appellees, and at such time was out of the city, and did not testify in the case. Therefore, what was said and done at the time the order was taken must be gathered from the evidence of Frances Karwacki and other employees of the appellant, who claim to have been present at the time the order was taken.

Frances Karwacki testified she had been engaged in the grocery business for a number of years, but had only been in the business in which she was then employed by her father for a period of three or four months, and was not at all familiar with that business; that Mr. Spear, the salesman of the appellees, who lived in the City of Baltimore, called at the appellant's store and brought with him samples of children's coats, and she, after examining them, agreed on behalf of the appellant to purchase of the appellees the coats mentioned in the order, of the sizes and quality selected by her. That he then and there wrote the order mentioned above and gave a copy of it to her. But before agreeing to make the purchase, she called Spear's attention to her unfamiliarity with the business in which she was then engaged and said to him, "If I am not satisfied with the coats and the coats are not what I want, I will return them," and he

said, "You can return them," and when asked if she saw in the order the printed words, "This order is not subject to cancellation or return," she said she did not, "I did not look for them, I looked at the coats and the number, so that I could get the same identical thing I ordered."

It is evident, however, not only from Frances Karwacki's evidence, but from the evidence of others offered by the appellant, that his right under the agreement to return the goods was to be exercised only in the event of the goods shipped not conforming to the samples by which they were sold. For she, after testifying as above, said, in respect to the goods shipped to the appellant, "I laid them on the counter, my sister and I were in the store, and I said, 'Look at that; I bought by the sample and the sample was as nice as possible,'" and when she was asked upon cross-examination "What you meant to say was that if the merchandise was not up to the sample you would return it?" and she replied "that is it." Without stating more of her evidence or the evidence of others upon this phase of the case, it is, we think, clear from the evidence that, by the agreement between the parties, the goods which the appellant agreed to buy were to conform to sample, and it was only in the event they did not that he should be permitted to return them to the appellees.

Frances Karwacki further testified that, after examining the goods, she on the same day called Mr. Spear over the 'phone and told him she was not going to take the coats and requested him to bring the samples down that he might see that they were not the coats she ordered. In reply to which he told her to send them back at once, she says, but because of an embargo upon the express company by which she wished to send them, she was prevented from doing so, although there was nothing to prevent her at that time from returning them by parcel post, by which they had been sent to her. On Monday following, Spear came to the appellant's place of business and she showed him the coats, and he again told her to send them back. She, however, did not send them back until the 19th of April.

It is also in evidence that with each shipment an invoice was sent, showing the number, description and price of coats sent at such time. At the top of each of these invoices is found the following statement:

"If this bill is not correct in any respect we must be notified at once, as no change of price or terms will be allowed at time of settlement. All claims must be made within five days from receipt of goods. Goods ordered will not be taken back. All payments are to be made direct to the house."

Section 22 of Chapter 346 of the Acts of 1910, known as the Uniform Sales Act, which is codified as section 25 of article 83 of the Code of Public General Laws of this State, provided that,

"(1) A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upward shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold and actually receive the same or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

"(3) There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

The agreement in this case was for the sale of goods of the value of fifty dollars and more, and there was nothing given in earnest to bind the contract, or in part payment, nor was there any note or memorandum in writing of the contract of sale *signed* by the party to be charged, or by his agent in his behalf. Consequently, if an enforceable contract of sale can be found in this case, it must be founded upon a receipt and acceptance by the buyer of the goods sold under the agreement as stated.

In the trial of the case below no instructions were asked for by the plaintiffs, appellees in this Court, but four prayers were offered by the defendant. The first, third and fourth were refused and the second granted, as modified.

The second prayer, as modified, was as follows:

"The jury are instructed that if they shall find that the goods in question were sold by a duly authorized agent of the plaintiff, by sample, then, unless they shall further find that the goods delivered correspond with the sample in quality, their verdict must be for the defendant, *unless the jury find from the evidence that the defendant did not return the goods or make a claim therefor within the time prescribed in the order, if the jury find the defendant accepted the written order for the goods, whether she did or did not read the terms on the order provided she had an opportunity so to do.*"

The prayer as offered by the defendant was modified by adding thereto the italicized words appearing at its conclusion.

By this modification the jury was required to find, before they could render a verdict for the defendant, that he returned the goods in question, or made a claim therefor within the time prescribed in the order.

In the order it is said "This order is not subject to cancellation or return." If these words, found in the unsigned order, which is without binding effect as a contract, are to be considered in determining the rights of the parties, they cannot be given the effect of prescribing the time within which the goods were to be returned.

It would seem that the court, in the modification of this prayer, had in mind the printed words at the top of the invoices which accompanied the shipments of the goods, but it can hardly be said that the conditions they imposed, after the agreement of the parties had been reached, can be controlling in respect to the question here presented.

The prayer also treats the acceptance of the "order for the goods" as an important factor in determining the validity of

the sale. It is not the acceptance of an unsigned *order,* but the acceptance of the *goods* that makes an unenforceable contract, like the one before us, enforceable under the statute.

The question in this case is, Were the goods, mentioned and described in the unsigned order, received and accepted by the appellant? And this question was for the jury to determine.

It is not denied by the appellant that he, through his daughter and agent, agreed to buy said goods, but it is claimed by him that he bought them by sample with the right to return them if they did not conform to the sample, and there is nothing in the evidence showing that the goods were not so bought by him, unless it can be said that the words "this order is not subject to cancellation or return" which appear in the order, have that effect.

These words, as we have said, were printed in blank orders used by the appellees. After an agreement had been reached between the parties, Spear, the salesman, wrote the order, that is, filled in the blank, naming and describing the goods bought, their sizes and prices, and handed a copy of it to Frances Karwacki and, as she says, she looked at it only to see that the goods mentioned therein were the goods she had agreed to buy on behalf of her father, the appellant; that she did not see the above mentioned words, nor did she know they were in the order, nor had such a provision been discussed by them in reaching the agreement to purchase the goods; that the agreement was an oral one and in it was included the right of the appellant to return the goods if they did not conform to sample. It was the oral agreement, the one upon which their minds had met, that became effective by the acceptance of the goods, if there was an acceptance.

In this case the defendant, upon the receipt of the goods, was entitled to retain them for a time reasonably necessary to enable him to examine their quality and quantity before returning them, and was not limited to any prescribed time, as stated in the prayer. *Hewes* v. *Jordan,* 39 Md. 481. The modified prayer was the only instruction given to the jury,

and it, we think, not only improperly stated the law of the case, but was misleading and confusing to the jury, and should not have been granted.

The prayer as offered, we think, was bad, as it does not submit to the finding of the jury the question of acceptance, and was properly rejected; and we find no error in the court's rulings in rejecting the defendant's third and fourth prayers.

By the first prayer the court was asked to instruct the jury that if they found "the defendant did not accept the goods, that is to say, that the defendant did not either before or after delivery of the goods, express by words or conduct his assent to becoming the owner of the goods in question, then their verdict must be for the defendant."

The objection urged against this prayer by the appellees is that "it limited everything to the defendant's own action," meaning, as we understand them, that it did not include the acts of the daughter who acted in his behalf. This objection, we think, is more technical than real, for by the uncontradicted evidence in this case the daughter was the agent of the father, the defendant, such fact was practically conceded, and the acts of the daughter were the acts of the defendant. The prayer, in respect to the objection so made to it, might have been more specifically stated, and probably it would have been better to have done so, but we will not say the prayer is bad because of such alleged defect. In all other respects we think the prayer is fully supported by the decisions in *Belt* v. *Marriott,* 9 Gill, 335; *Jones* v. *Mechanics Bank,* 29 Md. 293; *Hewes* v. *Jordan,* 39 Md. 479; *Jarrell* v. *Young,* 105 Md. 280, and other cases.

In the progress of the trial four exceptions were taken to the rulings of the court upon the admission of evidence.

The first was to the admission in evidence of the order taken by the salesman for the sale of the goods. The order, we think, was admissible, if for no other purpose, to show the goods that the defendant had agreed to buy, for it was admitted by Frances Karwacki, the daughter, that the goods

mentioned and described therein were those she had agreed to buy.

The second exception relates to the question asked of Berkman, one of the appellees, if the notice of the defendant to their salesman that he would not take the goods ever came to his notice. As the salesman was at the time in the employment of the appellees, notice to him was notice to the appellees, and whether he had or had not notified them was immaterial so far as the right of the defendant was concerned, and the question should not have been allowed.

The third exception is to the separate rulings of the court upon a question and answer thereto. If we consider the exception as properly taken, we think the court erred in its ruling thereon. Berkman, the same witness, was asked would the goods have been salable had they taken them back at the time they were returned to them, and, in substance, he answered that goods delivered before holidays, as in this case, and returned after the holidays, decreased largely in value, and the price that could be obtained for them thereafter was uncertain. This result, however, would not have the effect of defeating the buyer's right not to accept them in this case, as it does not fall within the exception found in section 25, sub-section 2, of article 83 of the Code.

The fourth bill of exceptions was to the ruling of the court in sustaining an objection to the question asked of the witness Frances Karwacki, if she signed the order referred to. This, we think, was an important question and she should have been allowed to answer it. But that she did not sign it was shown by other evidence adduced in the case and the appellant was not harmed thereby.

Because of the errors pointed out in the rulings of the court, the judgment below will be reversed.

> *Judgment reversed and new trial awarded, costs to be paid by the appellee.*