**287** *LEWIS JONES and Lewis Jones, Jr., Trading as Lewis Jones & Co., v. THE MECHANICS BANK OF BALTIMORE, Garnishee of G. A. Mundorff.

*Decided June 26th, 1868.*

SALE OF GOODS ; STATUTE OF FRAUDS ; DELIVERY AND ACCEPTANCE ; VERBAL CONTRACT.

Whilst there can be no acceptance under the 17th section of the Statute of Frauds, of goods sold under a verbal contract without delivery by the seller, there must be both delivery and acceptance in order to sustain an action upon the contract.  (*a*)          p. 293

Whether the buyer has accepted, depends upon the facts and circumstances of each separate transaction.          p. 293

The acceptance and receipt which the Statute requires may be made by an agent of the buyer *empowered for that purpose,* but the agency to accept and receive cannot be inferred from the fact that the buyer has designated a particular vessel or person as *carrier* of the goods.
          p. 294

It may be considered as settled, that the mere designation of a carrier by the vendee, and delivery of the goods to, and receipt of them by him as carrier, does not operate such acceptance and receipt as the Statute requires.     ·          p. 297

It makes no difference, that the notice of refusal to accept, came not from the hand or mouth of the buyer himself, but from a third party by his direction.          p. 297

Nor does the fact that he sold or offered to sell the goods at their place of destination in anticipation of their arrival, amount to such assumption of authority or assertion of ownership over them as to constitute such an acceptance, and receipt of the goods as the Statute of Frauds requires, when goods are sold under a verbal contract.   p. 297

---

(*a*)  See *Atwell v. Miller,* 6 Md. 10, note (*e*); *Hewes v. Jordan,* 39 Md. 472;  and where a sale is made conditionally, or on trial, the failure to comply with the condition, or to return the article within a reason-

Appeal from the Superior Court of Baltimore City.

This was an attachment on warrant, issued out of the Superior Court of Baltimore City, on the 17th of April, 1865, at the instance of the appellants, against the lands, tenements, goods, chattels and credits of G. A. Mundorff, a non-resident of the State of Maryland, to recover the sum of $1,507.50, due and owing from the said Mundorff to the appellants, for *one **288** hundred and fifty barrels of apples, at $10 per barrel, and for hauling the same at and for the sum of $7.50. The writ was laid in the hands of the appellee, as garnishee of said Mundorff, on the day that it was issued.

The appellee filed a plea, on behalf of the defendant, Mundorff, of " not indebted," and a plea, on its own behalf, of " *nulla bona.*" The appellee subsequently filed the following answer to interrogatories propounded to it by the appellants, viz.: " It is admitted that the garnishee had, at the time of laying said attachment in its hands, and now has, sufficient funds to cover plaintiffs' claim, provided it is established."

At the trial of this cause in the Superior Court, the sole point in controversy was the indebtedness of the defendant, Mundorff, to the appellants. The facts of the case are sufficiently stated in the opinion of the court.

The cause was argued before Bartol, C. J., Stewart, Miller and Alvey, JJ.

*Levin Gale* and *N. M. Pusey,* for the appellants :

Even if the effect of the agreement between the appellants and the defendant was a *contract of sale,* the facts of the case, as shown in the record, establish that there was such a delivery by the appellants, and acceptance by the defendant, of the apples, as to take the case out of the 17th section of the Statute of Frauds.

The property in and title to the apples, vested immediately, on their delivery on board the schooner in charge of Mr. Kilburn, in the defendant, and he alone could maintain an action

able time, may make the transaction absolute; see *Foley v. Mason,* 6 Md. 37-38, note (*d*); *Delamater v. Chappell,* 48 Md. 244; *Spickler v. Marsh,* 36 Md. 222.

against the carrier for their loss. *Dawes v. Peck,* 8 Term, 330; *Dutton v. Solomonson,* 3 Bos. & Pul. 584; *Ludlow v. Brown,* 1 John. 15; *People v. Hayne,* 14 Wend. 562; *R. R. Co. v. Whitesel,* 11 Ind. 55; Story on Sales, sec. 390.

No place of delivery being mentioned or agreed upon, other than the schooner of Mr. Kilburn, the appellants were bound **289** *to deliver according to the agreement. Story on Sales, sec. 305.

The apples were liable to seizure, at the suit of the creditors of the defendant, immediately after their delivery at or on board the schooner. *Hall v. Richardson,* 16 Md. 396.

An actual or manual delivery is not in all cases necessary to gratify the provisions of the 17th section of the Statute of Frauds. *Atwell v. Miller,* 6 Md. 10.

A delivery to an agent or carrier designated by the vendee, is sufficient to gratify the requirements of the Statute of Frauds. *Hunt v. Bush,* 96 Eng. Com. Law, 496; *Anderson v. Hodgson,* 5 Price, 630; *Spencer v. Hale,* 30 Vt. 314; *Snow v. Warner,* 10 Met. 132, 138; *Outwater v. Dodge,* 6 Wend. 397.

The defendant should have given the appellant's notice, within a reasonable time, of his refusal to accept the apples. Story on Sales, secs. 405, 408; 2 Selwyn's Nisi Prius, 865, margin.

There was no contract of sale in this case between the appellants and the defendant, because, at the time of the interview, on or about the 10th of March, 1865, the appellants had no title to the apples, nor did they know that they would be able to procure them. Story on Sales, sec. 1, 186.

The contract spoken of by the witnesses was not to *sell* and *deliver,* but to *procure* and deliver the apples, and was not within the 17th section of the Statute of Frauds. Brown on Statute of Frauds, sec. 310; *Cobbold v. Caston,* 8 Moore, 456; *Bird v. Muhlinbrink,* 1 Rich. (S. C.) 199; Story on Sales, sec. 262.

*Stewart Brown* and *George Wm. Brown,* for the appellee:

Under sec. 17, of the Statute of Frauds, in order to make a contract good, without a memorandum thereof in writing, two things, distinct in their nature, must be completed:

*1st. On the part of the vendor, a delivery complete, **290** full and unequivocal as the case would admit of, made with the purpose and having the effect of putting the possesison of the goods beyond his power and control; and,

2nd. On the part of the vendee, a separate and distinct act, to wit, an acceptance and actual reception of the goods, equally complete and unequivocal. 3 Parson on Contracts, 40, etc.; Brown on Statute of Frauds, secs. 316, 317.

It was moreover incumbent on the plaintiffs affirmatively to establish, that both these requisitions of the statute had been complied with. This was not done. Because, all the evidence upon the subject, in the Record, only tended to maintain the first of these propositions, if indeed it accomplished so much. But in reference to the second proposition, there was no evidence whatever to go to the jury; because,

1st. Upon the hypothesis of the defendant's prayer, fully supported by the testimony, the jury were required to find that under the contract, the apples were to be transported to City Point for delivery to the defendant there. If that were the place of delivery, then they never came into the possession or control of the defendant, and all his acts and declarations there, not merely negative any inference of acceptance, but expressly establish, that on the contrary, he repudiated the contract and refused to accept.

2nd. Nor could the evidence of any intermediate delivery of the goods on the schooner Mansion, although indicated by the defendant as a carrier, have any bearing on the question of acceptance; because no legitimate inference of any authority in the carrier, could be drawn from his designation or employment by defendant, beyond the authority derived from the nature of the service to be performed by him, viz: to receive the goods for the sole purpose of transportation. No express authority, in the carrier to receive and accept, in order to bind the bargain, was attempted to be shown.

The question as to what constitutes such acceptance as will satisfy the requirements of the Statute, has been much dis-*cussed both in England and this country, and with **291** some difference of opinion, but the later English cases have laid down the rule or test upon the subject, viz: " That there can be no sufficient acceptance so long as the vendee retains the

right of objecting to the quantity or quality of the goods."
*Hanson v. Armitage,* 5 Barn. & Ald. 557.

The rule laid down in this case has been adopted and enforced in most of the later English cases, and also adopted in this country. *Norman v. Phillips,* 14 M. & W. 277; *Farina v. Home,* 16 M. & W. 119; *Meredith v. Meigh,* 2 Ellis & B. 363; *Hunt v. Hecht,* 8 Exch. 814; *Hunt v. Bush,* 1 Ellis, B & E. 494; *Astey v. Emery,* 4 M. & S. 262; *Simmonds v. Humble,* 106 Eng. Com. Law, 258; *Shindler v. Houston,* 1 Comst. 261; *Currie v. Anderson,* 2 Ellis & Ellis, 591; Browne on Frauds, ch. 15, secs. 327, 328; Story on Sales, sec. 276; *Acebat v. Levy,* 10 Bing. 376; *Nicholson v. Bower,* 1 Ellis & Ellis, 172.

The mere delivery to and acceptance by a carrier or wharfinger for the purpose of transportation or forwarding the goods, although such carrier or wharfinger is specially designated by the vendee, cannot operate as an acceptance within the meaning of the Statute. *Frostburg Mining Co. v. N. E. Glass Co.* 9 Cush. 115; *Bushel v. Wheeler,* 15 Q. B. 442; *Coombs v. R. R. Co.* 3 Hurl. & Nor. 510; Browne on Frauds, sec. 329; *Cusack v. Robinson,* 101 E. C. L. 297, 305.

Miller, J., delivered the opinion of the court.

The facts of this case, upon which are based the main propositions of law contained in the several prayers on either side, are these:

In the early part of March, 1865, Mundorff, who was then engaged at City Point, Virginia, in the business of furnishing supplies to sutlers in the army, *verbally agreed* with the plaintiffs, Lewis Jones & Co., merchants in Baltimore, to buy from them two hundred barrels of apples at $10 per barrel, and **292** *directed then to send the apples to the schooner Mansion, chartered by Mr. Kilbourn, then lying at a wharf in Baltimore, and on which he had shipped other merchandise, to be by that vessel forwarded to him at City Point. The plaintiffs did not have the apples at the time, but subsequently obtained one hundred and fifty barrels, which they delivered on board the schooner, taking from the mate a receipt stating that one hundred and fifty barrels of apples had been received from the plaintiffs, " on board the schooner Mansion, for Mr. Mun-

dorff." The vessel sailed on the 17th, but did not arrive at City Point until the 29th of March, the usual time of such a voyage being three or four days. Upon their arrival the apples were found to be in a damaged condition, most of them rotten, and Mundorff refused to accept or receive them, except four barrels of russets which were in good order; but Gilbert, who acted as supercargo and receiver of freight for the vessel, refused to let him have these four barrels, unless he would pay freight on the whole lot; this Mundorff declined to do, and then directed Gilbert to notify the plaintiffs of his refusal to accept; and Gilbert, accordingly, on the 31st of March, telegraphed to the plaintiffs that Mundorff would not take the apples, and asked what he should do with them: this telegram was duly received by the plaintiffs but not answered. Gilbert then selected out enough to make about twenty barrels and sold them for the freight—the rest were worthless. There is proof tending to show the apples were in good order when shipped, and consisted of russets, Baldwins and other varieties, and that the freight was to be paid by Mundorff. The proof is conflicting as to whether the contract was for russets alone, and Mundorff in confirmation of his understanding that he had bargained for russets only, says he had sold at City Point russet apples in anticipation of the arrival of these. No money was paid at the time of the contract, and nothing given in earnest to bind the bargain.

Upon this evidence prayers are based, presenting for our determination the questions, whether there was a sufficient *acceptance and receipt of the goods under the 17th sec- **293** tion of the Statute of Frauds, which requires, as essential to the validity of a verbal contract for the sale of goods of the value of ten pounds and upwards, in the absence of any note or memorandum in writing, or any thing given in earnest, or in part payment, that the buyer " shall *accept* part of the goods so sold and *actually receive the same.*"

What will constitute an acceptance and receipt so as to gratify this clause of the statute, has been the subject of a multitude of decisions, many of which it is difficult, if not impossible, to reconcile. We shall certainly attempt no such task. Confusion has arisen sometimes from not bearing in mind the exact words of this section of the statute, more frequently

from the use by Judges and text writers of the inaccurate ex-
pression, "*delivery required by the statute*," and from want
of discrimination between a sale at common law, which is
consummated by delivery, and a sale as affected by this stat-
ute.   The statute does not speak of delivery, but superadds
to the delivery which the common law requires, acceptance
of the goods, or some part of them, by the purchaser.   It con-
fers upon the buyer alone the *privilege* to prevent a consumma-
tion of the contract by refusing to accept and receive the goods.
Whilst there can be no acceptance under the statute without
delivery by the seller, yet there must be both delivery and ac-
ceptance in order to sustain an action upon the contract.   This
is very accurately stated in Starkie on Evidence, quoted with
approval by the Court of Appeals in *Clarke v. Marriott*, 9 Gill,
335.   "In order to satisfy the statute there must be a *delivery*
of the goods with intent to vest the right of possession in the
vendee, *and* there must be an *actual acceptance* by the latter
with intent to take possession as owner."

Whether the buyer has accepted, depends upon the facts
and circumstances of each separate transaction.   No general
inflexible rule upon the subject has been or can be estab-
lished.   It is well remarked by an eminent jurist and writer,
**294** *" We must inquire into the intention of the buyer, the
nature of the goods and the circumstances of the case.   If the
buyer intends to retain possession of the goods, and manifests
this intention by a suitable act, it is an actual acceptance of
them, although this intention may be manifested by a great
variety of acts in accordance with the varying circumstances
of different cases." 3 Parsons on Cont. 44.   In the earlier de-
cisions, slight acts were considered as sufficiently evidencing
acceptance and receipt, but the later cases are much more
strict, evincing a commendable determination by the courts
to give full effect to the design and spirit as well as the letter
of the statute. .

The most material proposition, and the facts chiefly relied
on by the appellants as constituting acceptance, are, that the
buyer directed the goods to be sent or delivered to a particular
vessel, and that the sellers did so deliver them, and they were
accepted and received by the person in charge of the vessel,
and it is insisted that delivery to and acceptance by such per-

son, was a delivery to and acceptance by the buyer. The authorities are very clear that the acceptance and receipt which the Statute requires, may be made by an *agent* of the buyer *empowered for that purpose,* but the decided weight of authority, both English and American, is, that the agency to accept and receive cannot be inferred from the mere fact that the buyer has designated a particular vessel or person as *carrier* of the goods. In the early case of *Hart v. Sattley,* 3 Camp. 528, at *nisi prius,* where goods ordered verbally were shipped by the seller by a certain vessel according to the customary dealings between the parties, it was held, the buyer must be considered as having constituted the master of the vessel as his agent to accept and receive the goods; and in *Dawes v. Peck,* 8 Term, 330, it appears to have been held by the Court of Queen's Bench that the same result followed from the goods being delivered to a carrier designated by the buyer for that purpose. But the first of these cases has been expressly overruled and the doctrine asserted by both entirely \*overthrown by a long **295** series of subsequent adjudications by the most learned and eminent judges, commencing with the case of *Hanson v. Armitage,* 5 Barn. & Ald. 557, decided by Chief Justice Abbott. Some of these cases are very similar in their facts to this, and we refer particularly to *Astey v. Emery,* 4 M. & S. 262; *Acebat v. Levy,* 10 Bing. 376; *Norman v. Phillips,* 14 M. & W. 277; *Farina v. Home,* 16 M. & W. 119; *Coombs v. R. R. Co.* 3 Hurl. & Nor. 510; *Hunt v. Hecht,* 8 Exch. 814; *Bushell v. Wheeler,* 69 E. C. L. 443; *Hart v. Bush,* 96 *Ib.* 494; *Cusack v. Robinson,* 101 *Ib.* 299; *Nicholson v. Bower,* 102 *Ib.* 172. It is true the principle laid down in some of them as a rule for determining the question of acceptance, viz.: that there can be no acceptance and receipt affirming and binding the contract, *so long* as the buyer has the privilege of returning the goods *as objectionable in quantity or quality,* has been much shaken by the decision of Lord Campbell, C. J., in *Morton v. Tibbett,* 69 E. C. L. 428. In that case, wheat was purchased by sample, and the buyer directed the bulk to be delivered to a carrier named and sent by himself, and took the sample away with him; on the same day, he re-sold the wheat by the same sample, and directed the carrier to convey it to the sub-vendee, who rejected it as not corresponding with the sample, and on being informed of this, the

buyer repudiated his contract with the seller on the same ground. From *these facts* it was held there was evidence to warrant a jury in finding acceptance and actual receipt by the buyer, but the court did not decide that the mere fact of delivery to a carrier named by the buyer was sufficient, but rested their decision upon the ground that the vendee re-sold the goods and altered their destination while in the carrier's hands, and held, *this* to be evidence of a receipt, as is clearly explained by Lord Campbell himself in the subsequent case of *Meredith v. Meigh,* 75 E. C. L. 370; in which latter case, that of *Bushell v. Wheeler,* 69 *Ib:* 443, where the vendee ordered the goods to **296** *be sent by a particular ship, is also explained and the acceptance there inferred, put upon the ground that the goods so sent were left lying in the warehouse of the owner of the ship for five months, with the vendee's knowledge, and *that,* say the court, "was evidence that the vendee had constituted the owner of the ship, who had been agent to carry his agent *to keep* the goods; and if he had done so he had received them himself." The reasoning of his Lordship in *Morton v. Tibbett, supra,* is directed with much force against the position that the acceptance must be such as will preclude the buyer from questioning the quantity or quality of the goods, or in any way disputing that the contract has been fully performed by the vendor. His argument is that the Statute permits as sufficient, part payment, however minute the sum, and acceptance and receipt of part, however minute the portion, and that this conclusively shows that the condition of acceptance and receipt imposed by the Statute, was not the complete fulfillment of the contract to the satisfaction of the buyer, and that the effect of fulfilling the condition is merely to waive written evidence of the contract, and to allow the contract to be established by parol, as before the Statute of Frauds passed, and his conclusion is that the acceptance to let in this parol evidence is a different acceptance from that which affords conclusive evidence of the contract having been fulfilled, and hence a party may do acts which will amount to an acceptance within the Statute, without having done any thing to preclude him from contending or objecting that the goods do not correspond with the contract. It is not necessary now to determine whether this construction of the Statute should be adopted by this court,

because if adopted, it would not affect the decision of this case. It may be remarked, however, that though questioned in some of the subsequent decisions, the doctrine announced in *Morton v. Tibbett* has, in a very recent case in the Court of Queen's Bench, (*Currie v. Anderson,* 105 E. C. L. 598,) received the approval of Crompton, J., who says that decision must in that court *be considered the law of the land, and that the **297** discussion in the case before him had more than ever satisfied him of its correctness.

From these authorities it may be considered as settled, that the mere designation of a carrier by the vendee, and delivery of the goods to, and receipt of them by him as carrier, does not operate such acceptance and receipt as the Statute requires. There are no other facts in this case which would warrant a jury in finding such acceptance and receipt. No express authority or agency in the carrier to accept or receive the goods, in order to bind the bargain, is attempted to be shown. The receipt given by the mate, in fact, shows the master of the schooner did not claim to have any authority beyond that of receiving the goods for the purpose of carriage, and no legitimate inference of any agency in the carrier can be drawn from his designation or appointment, except that derived from the nature of the service to be formed, viz.: to receive the goods for the sole purpose of transportation. The vessel was not designated as a *place of delivery*, at which the buyer was bound to exercise his option of accepting or rejecting the goods. Mundorff had never seen the apples; was not in Baltimore when they were shipped, and the sellers knew when the verbal contract was made and the order to send them to this vessel given, that they were to be transported to City Point, where the vendee was then engaged in business, and there delivered to him by the master of the vessel in the sole capacity of carrier. The refusal to accept was promptly made and promptly communicated to the sellers, and it can make no difference that this notice of refusal came not from the hand or mouth of the buyer himself, but from a third party by his direction. Nor does the fact that he sold or offered to sell, at City Point, Russet apples in anticipation of the arrival of these, amount to such assumption of authority or assertion of ownership over them as to bring the case within the ruling of *Morton v. Tibbett,* as explained in *Meredith v. Meigh.*

**298**    *We have carefully examined the cases of *Atwell v. Miller*, 6 Md. 10; *Hall v. Richardson*, 16 Md. 396, and *Thompson v. B. & O. R. R. Co.* 28 Md. 396, and find nothing in them in conflict with the views here presented, and we do not mean to disturb or unsettle any of the propositions of law announced in those cases.

Finding in this case no proof from which a jury would be authorized to draw the inference of such acceptance and receipt of the goods sold by this verbal contract, as the Statute of Frauds requires, it follows there was no error in the granting of the defendant's prayer, and in the rejection of the first, second and third prayers of the appellants. Their fourth prayer, which presents the theory of an executory contract, is entirely unsupported by proof, and was also properly rejected, and the judgment must be affirmed.

*Judgment affirmed.*