McCORMICK HARVESTING MACHINE CO. *v.* CUSACK.

1. SALE — STATUTE OF FRAUDS — PART DELIVERY — SEPARATE TRANSACTION.

> Where an agent for a harvesting machine company, to induce a customer to order a binder, agreed to "put in on the deal," without extra charge, a corn sheller belonging to him, and of which the company had no knowledge, and the order as signed made no mention of the sheller, its delivery by the agent did not operate as a part delivery, sufficient to take the agreement for the purchase of the binder out of the statute of frauds.

2. SAME—ASSUMPSIT FOR PURCHASE PRICE — PASSING TITLE — DELIVERY.

> *Assumpsit* will not lie for the price of a machine purchased under a written order directing that it be consigned for the purchaser to the care of a local agent of the seller, to be paid for in approved notes on delivery, where the purchaser refuses to execute the notes as agreed, and the property is not turned over to him; there being no such delivery as to pass the title.

Error to Kent; Grove, J.    Submitted April 8, 1898. Decided April 19, 1898.

*Assumpsit* by the McCormick Harvesting Machine Company against George M. Cusack for the purchase price of a binder. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Wolcott & Ward*, for appellant.

*Maher & Salsbury*, for appellee.

MOORE, J.   The plaintiff sued the defendant, in an action of *assumpsit*, to recover the price of a binder. The circuit judge directed a verdict for defendant.   Plaintiff appeals.

The testimony on the part of the plaintiff was substantially as follows: Mr. Grutsch, a traveling salesman for plaintiff, visited defendant, and urged him to sign an order for a harvesting machine. The witness said:

"I had my order drawn up, ready, trying to have him sign the order, and sell him the machine; showed him the contract, and everything; and he broke out of the binder conversation, and wanted to know if we handled corn shellers; and I told him we did not, but that I had a second-hand corn sheller, that I had in business when I was in the feed business, that I would sell him cheap. He wanted to know what the price would be. I told him three dollars; and he finally said, 'If you will put in the corn sheller on this deal, we will call it a deal.' I told him we would do it; and it was getting dark and late, and I says, 'We will throw in the corn sheller, and make the deal.' I handed him the order, and he signed it, and I gave him a copy of the order, and we went home."

The order signed was as follows:

"McCormick Harvesting Machine Company's Order Blank.

"Give each purchaser a duplicate of this order.                    Delivered on cars in Chicago.

"McCormick Harvesting Machine Company will ship for the undersigned, any time before the coming harvest, one of their latest improved 6-ft. cut binder, carrier, and trucks, consigned to the care of Edw. Stoddard, at Grand Rapids; the undersigned agreeing on delivery of the machine to pay the McCormick Harvesting Machine Company $125, in the following manner: To execute approved notes for the sum of $30, payable on the 1st day of November, 1897; $40 payable on the 1st day of November, 1898; $40 payable on the 1st day of November, 1899; $15 allowed on one old Wood binder,—with interest thereon at the rate of 6 per cent. per annum from date, July 1st, 1898, next, until due, and 8 per cent. thereafter until paid, and agree to make settlement as above stated upon delivery of machine. The machine to be warranted as per the following warranty, without addition or erasure, a copy of which I have this day received: The machine is warranted to be well made, of good material, and durable with proper care. If, upon one day's trial, the machine should not work well, the purchaser shall give immediate

notice to said McCormick Harvesting Machine Company, or their agent, and allow time to send a person to put it in order. If it cannot then be made to work well, the purchaser shall return it at once to the agent of whom he received it, and all cash and notes received in settlement will be refunded. Continuous use of the machine, or use at intervals through harvest season, shall be deemed an acceptance of the machine by the undersigned.

"Dated the 11th day of January, 1897.

"GEORGE M. CUSACK."

The corn sheller was afterwards delivered to defendant. It was a corn sheller owned by Mr. Grutsch, and not by the plaintiff, and at this time was at Grand Rapids. The witness says that the price of the corn sheller was afterwards passed to his credit, and that he got the money for it. The order given by defendant was not sent to Chicago.

Mr. Stoddard was sworn as a witness, and testified that the first time he ever saw defendant was about the 1st of June, when he came into the office at Grand Rapids, and said that he wanted to countermand his order for a binder. "I said to him, we could not do it; that we had already received his machine, and had it there for him any time." Afterwards this witness received a written countermand of the order from defendant, which had first been mailed to the plaintiff at Chicago, which was forwarded by it to Mr. Stoddard. It was dated June 12, 1897. The witness said the machine was still at his place at the time of the trial; that defendant had never been to get it, and had never signified his willingness to take it. The testimony of this witness was that the machine was shipped from Chicago with 13 or 15 others; that they were not put together when shipped; that, after the machines arrived in Grand Rapids, they were set up, and one of them was set apart in one corner of the room; that it was not labeled with the name of the purchaser, and there was nothing to distinguish it from any other machine; that it was not placed on board the cars in Chicago, consigned to Mr. Cusack. June 12, 1897, defendant sent a three-dollar postal order to Mr. Grutsch, in a letter; say-

ing it was in full payment for the corn sheller, and that he had countermanded the order for the binder. Before defendant saw Mr. Stoddard, he notified Mr. Grutsch, as early as in April or May, that he had countermanded his order, and should not take the machine. June 18th, Mr. Grutsch visited defendant, with notes drawn to comply with those described in the order, and requested him to sign them. This he refused to do. At this time the postal order for $3 was returned to defendant by Mr. Grutsch, and defendant produced it upon the trial.

It was the claim of defendant that, when the order was given, he was told by Mr. Grutsch that he could countermand the order any time before harvest, by simply seeing Mr. Stoddard, in Grand Rapids, and telling him he did not want the machine. He also claimed that Mr. Grutsch told him it would help him very much about sales in that neighborhood if he would sign the order, and that, if he would sign it, Mr. Grutsch would give him the corn sheller, and that he relied upon these statements when he gave the order. He testified that he notified Mr. Grutsch the fore part of April, and Mr. Stoddard a week or two later, that he did not want the machine, and would not take it, and that later he saw Mr. Stoddard again, and told him the same thing, and on the 12th of June sent a written countermand to Chicago. He denied that at the time he saw Mr. Stoddard he was told the machine was on hand. There is nothing in the record to show that, before Mr. Cusack undertook to countermand his order, he had any knowledge that any machine had been consigned for him to Mr. Stoddard, at Grand Rapids; nor is there anything in the record to show that any machine was ever pointed out to him as the machine which was intended for him, or that he ever saw any machine which he was told was intended for him, or that he was ever requested to make a selection of those shipped from Chicago, one of which, it is said, was intended for him.

After the testimony was all in, Judge Grove concluded that the question involved was one of law. He concluded

that the agreement in relation to the corn sheller was a distinct transaction from the order for a sale of the machine, and found that there was no delivery of part of the goods mentioned in the order, so as to take the transaction out of the statute of frauds. His further reasons for directing the verdict are stated by him as follows:

"I do not believe that it was the intention of these parties that there should be any delivery of the machine into the actual possession and control of the defendant until he complied with his part of the agreement, by giving approved notes; and that he refused to do. It is a part of the order that the defendant agrees on delivery of the machine to pay by giving those three notes. Now, he could not take the machine, against the consent of Mr. Stoddard, acting for the plaintiff, without giving those notes. I do not think there was a delivery.' But, whether the title had passed under the contract by its acceptance, it was accepted, in my judgment, by the shipment to Mr. Stoddard, at Grand Rapids. If the order had been forwarded to Chicago, and this machine, pursuant to that order, had been sent just as the car load was sent,—directed to Mr. Stoddard as consignee,—it might be said that there was a delivery; it might be said that the defendant himself designated the manner and place of delivery, as well as the time, and that he made Mr. Stoddard his agent to receive it here at Grand Rapids. Still, he could not have got the property unless he completed his part of the agreement by giving approved notes. I understand it to be a general rule that where the title has not passed, and there is a performance—a full performance—on the part of the vendor, and a readiness to deliver and pass the title, and a refusal on the part of the vendee to carry out his part of the contract, an action may be maintained against the vendee for damages on account of the breach of the contract. That is not this form of action. This is an action for the price. If the title had passed; if this were a case where the property had gone into the possession and control of the defendant, and he refused to give the notes,—that is, he refused to give security ( I take it, by the term 'approved notes,' some security was mentioned),—if he refused to give it, that an action for the price might have been presently maintained, notwithstanding the rule that where goods are sold on credit, and there is a refusal on the part of the vendee to accept, the plaintiff cannot sue

(the vendor cannot sue) for the price until the credit expires, but must sue the defendant for the breach. And I think it was held (it is in Michigan, at least) that where there is an agreement for credit, and there is to be security given by the vendee, and he refuses to give the security, an action may be maintained for the price payable at once. I am inclined to hold in this case that it was the intention of the parties that the title to this machine should pass on delivery to the defendant, at Grand Rapids, on his paying for it in the manner provided by the contract,—by executing approved notes,—and that an action for the price, under all the circumstances of this case, cannot be maintained. That will be your verdict, gentlemen of the jury, —verdict for the defendant, of no cause of action."

It is urged by the appellant that the court erred in holding that the delivery of the corn sheller was not a delivery of part of the goods, and sufficient to take the case out of the statute of frauds. The corn sheller did not belong to the plaintiff. At the time of the alleged contract there is nothing to indicate that the plaintiff knew that this particular corn sheller was in existence. No mention was made of it in the order. So far as it was concerned, it was a transaction, not between the plaintiff and defendant, but between Mr. Grutsch and defendant. The court did not err in so holding.

Speaking for myself, I think there was no acceptance of this order. It is not shown by the evidence that the plaintiff ever shipped for Mr. Cusack, consigned to the care of Edward Stoddard, a binder, as requested in the order. The most that can be said of the transaction is that a quantity of machines were shipped to Mr. Stoddard, one of which he set apart for defendant. Mr. Stoddard testified that the company was never directed to ship a machine to Mr. Cusack, in his care. It, however, is not necessary to pass upon that feature of the case, as we are all agreed that the circuit judge was right in holding that there had been no such delivery of the machine as to vest title in the defendant. It will be observed that plaintiff, when the order was given, did not agree to fill the order. It was not bound to do so, and, if it had failed to send the machine, defendant would have been remediless. The

order provides that upon the delivery of the machine the notes shall be given.    No machine had been consigned to defendant.    None had been pointed out to him as his.    If he had wanted to insist upon having a machine, and for any reason Mr. Stoddard had refused to deliver him one, how could he have obtained a machine by bringing replevin? Or, if he had insisted upon having the machine which Mr. Stoddard says was there, could not Mr. Stoddard have refused to deliver it to him until he had given approved notes?    We do not think there had been such a delivery that title passed to defendant, and, before plaintiff could maintain *assumpsit* for the price of the machine, the title must vest in the vendee.    *Ganson* v. *Madigan*, 13 Wis. 67.    See *Yockey* v. *Norn*, 101 Mich. 193 ( 26 L. R. A. 145 ).    Before the delivery of the goods will be sufficient to take the contract out of the statute of frauds, where such an order as this one is given, some of the goods must be received and accepted by the vendee or his agent.    In 8 Am. & Eng. Enc. Law, at page 730, it is said:

"To the existence of actual receipt by the buyer, it is essential that there should be a relinquishment by the seller of his vendor's lien, coupled with a taking of the goods, in whole or in part, by the buyer, or an agent with his authority, with the intention of maintaining a possession adverse to the seller."

Before defendant had any notice that the goods had been shipped from Chicago, he notified plaintiff's agent that he would not receive them.    On the 12th of June he notified plaintiff, in writing, that he would not receive them; and it was not until six days later that plaintiff indicated to him that it would not insist upon approved notes before it would deliver the machine, or gave any intimation that it relinquished its lien as vendor.    The defendant all the time has declined to take any possession of the machine, and it cannot be said that he has taken any possession adverse to the seller.

Judgment is affirmed.

The other Justices concurred.