# ROBERT C. RICHARDSON vs. CHRISTIAN SMITH
## ET AL.

*Sales—Acceptance and Receipt Under the Statute of Frauds—Delivery of Samples—Question for the Jury.*

When there is a verbal agreement for the sale of a quantity of goods, the mere fact that the buyer receives and takes away samples, does not constitute such an acceptance and receipt of part of the goods as will satisfy the requirements of the seventeenth section of the Statute of Frauds, when the parties do not treat the samples so delivered as being a part of the goods sold.

Whether the buyer has received and accepted part of the goods sold is generally a question of fact for the jury; but in a case where the evidence clearly shows that there was no acceptance and receipt by the buyer, the Court may instruct the jury that the evidence is legally insufficient to entitle the vendor to recover.

Appeal from the Circuit Court for Baltimore County (BURKE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*John S. Young* (with whom were *Boarman & Lindsay* on the brief), for the appellant.

*D. G. McIntosh* and *Thomas H. Robinson*, for the appellees.

BOYD, J., delivered the opinion of the Court.

The appellant sued the appellees to recover a balance which was alleged to be due him for six hundred and thirty-three cases of tomatoes purchased of him by them. The declaration contains most of the common counts, a bill of particulars was demanded and filed and issue was joined on the general issue pleas. At the conclusion of the plaintiff's testimony, the Court below granted two prayers taking the case from the consideration of the jury. One of them instructed the jury that

the plaintlff had offered no legally sufficient evidence entitling him to recover, and the other that there was no legally sufficient evidence of a sale and delivery of the goods sued for to gratify the Statute of Frauds. Judgment having been entered on the verdict, rendered in accordance with the instructions, this appeal was taken.

The principal question is whether there was such an acceptance and receipt of part of the goods sold as to take the contract of sale out of the operation of the 17th section of the Statute of Frauds. It is conceded that nothing was given in earnest to bind the bargain or in part payment, and that no note or memorandum in writing of the bargain was made. It must, of course, be admitted that if there was any legally sufficient evidence of the aceeptance and receipt of part of the goods sold, it should have been submitted to the jury, and it must likewise be conceded that ordinarily that is the tribunal to pass upon such questions.

For a compliance with this requirement of the statute, the appellant relies upon the delivery to and the acceptance by Mr. Smith, one of the appellees, of two or three cans of tomatoes given to him by the appellant at the store of the latter, at the time the alleged sale was made; while the appellees contend that those cans were only samples of the tomatoes to be sold, and were not in fact, or intended to be, included in the sale. Mr. Richardson owned a farm, on which he had a cannery, a short distance from Churchville, Harford County, Md. He also carried on a general merchandise business at Churchville. On the day of sale he had between three and four hundred cases of tomatoes at Aberdeen, a station on the P. B. & W. R. R., about seven miles from his store, and had several hundred more cases at his cannery on his farm—there being altogether 633 cases of the kind sold. After some communication by telephone, Mr. Smith went from Belair to see Mr. Richardson at Churchville with reference to the tomatoes. The latter testified: "He came in and I got some tomatoes I just took out of the warehouse, and got them down for him to sample; he said, 'I will take these with me and I will see

about them,' and I said, 'You are a member of the firm and know what a good can of tomatoes are. Sample it here and if they are all right say so;' he hemmed and hawed awhile and did open the can and said they were a good sample of goods." Mr. Smith endeavored to get him to give him an option until the next morning, but he declined and finally Mr. Smith said he would take them. Mr. Richardson then said, "Understand it is a dollar and forty cents a dozen f. o. b. Aberdeen sight draft bill of lading attached, because I won't ship them any other way; and he said 'All right, you will ship them out all right,' and I said if I could get a car to Aberdeen I will ship them." He then ascertained that there was a car there and commenced the next morning to load those at Aberdeen and to haul the others there from his cannery.

Mr. Richardson was afterwards asked "Did you deliver to him any goods, if so state what they were?" To which he replied, "He took two cans with him, yes, sir." Again, "You delivered to him two cans?" and he replied, "Yes, sir." He also said the samples Mr. Smith got came off the shelf at his store. Mr. Hawkins, a clerk at appellant's store, then gave his version of what took place between them at the time of the purchase. He said, "Mr. Smith came in the store and there were three cans of tomatoes taken down as samples." He was afterwards asked "Now, were the goods after that delivered to Mr. Smith?" to which he replied, "Two cans he took with him," and again: "Did he take them away with him?" to which he replied, "Yes, sir." His cross-examination was as follows on that subject: "Q. Mr. Hawkins, I think it was stated yesterday substantially that Mr. Richardson was expecting Mr. Smith and as soon as he arrived he went in and got these two cans, or rather the samples off his shelf and put them down, is that correct? A. Three cans, yes, sir, tha is right. Q. That is correct then that he went and got them off his shelf himself and put them down? A. Yes, sir. Q. He got them as samples, did he? A. Yes, sir, I suppose. Q. That was the first thing that was done, was it? A. Yes, sir, Q. When he got these two or three cans down off the

shelf they were examined before there was any contract as you think made ? A. Yes, sir. Q. Now, when you say he got them down as samples Mr. Hawkins, of course he got them down to see what sort of goods they were, you could not tell them from the outside of the cans, could you ? A. Of course not. Q. When a man buys tomatoes in cans he can't judge them until he opens a can, that is the universal way of judging the goods ? A. I suppose so, I have not had much experience in that. Q. You said a moment ago that Mr. Smith said he wanted to take these samples to Belair ? A. Yes, sir."

The testimony also shows that the appellant knew the appellees were brokers in canned goods, and Mr. Morgan, a broker called by the plaintiff, said on cross-examination that it was the universal rule in the sale of canned goods to have samples; that the seller always furnishes the broker with samples and the broker often forwards them to the buyer. The day after the conversation referred to Mr. Smith telephoned to the appellant that the party would not take the goods with a sight draft attached to the bill of lading. He replied that he had sold them to him (Smith) and knew no one else in the transaction. The appellant then continued to load the car with the goods and the appellees having refused to take them he sold them to different persons at what he claims to have been the market prices at the time of sale. In the bill of particulars filed he charges the appellees with 633 cases sold to them on June 24th, 1902, and credits them with proceeds of sales, at different times between July 2nd and September 12th, of 633 cases, leaving a balance of $387.10, which he claims with interest—thus showing that he did not include the two sample cans, even in his bill of particulars filed in this case.

Without quoting further from the evidence, it is perfectly manifest that the samples were not a part of the six hundred and thirty-three cases. Although the appellant and his clerk said, in answer to the questions whether he had delivered any part of the goods, that Mr. Smith took two of the cans with

him, the testimony of both of them shows conclusively that they were the samples, and there is not a particle of evidence to show that they were intended to be or were treated by either party (much less both) as any part of *the goods sold.* Mr. Hawkins testified that Mr. Smith said he wanted to take the samples to Belair, while the goods sold in this transaction were to be delivered f. o. b. Aberdeen and, according to the appellant, were delivered there.

We have thus stated at some length the material parts of the testimony because it is mainly a question of fact and we will now briefly refer to the authorities on the subject.   In 29 *Am. and Eng. Ency. of Law* (2nd ed.), 993, it is said, "The receipt and acceptance of the buyer of samples of the goods are held to be a compliance with the statute when the samples are considered and treated *by both parties* as constituting a *part of the goods sold* and as *diminishing the quantity or weight of such goods* to the extent of their own *bulk, otherwise the taking of samples has no effect upon the validity of the contract.*" (Italics are ours.)   That is a plain, reasonable and just statement of what the law should be, and is amply supported by the authorities cited in that volume.   The distinction is clearly made in some of the early English cases.   *Klinitz* v. *Surry,* 5 Esp. 267; *Hinde* v. *Whitehouse,* 7 East. 558; and in *Gardner* v. *Grout,* 2 C. B. N. S. 340 (89 E. C. L. 340).   COCKBURN, C. J., likewise pointed it out.   The same principle is announced in *Browne on Statute of Frauds* (4 ed.), sec. 334.   See also *McCormick Harvesting Co.* v. *Cusack,* 116 Mich. 647; *Remick* v. *Sandford,* 120 Mass. 309, and *Dierson* v. *Petermeyer,* 109 Ia. 233 (s. c., 80 N. W. 389), and cases cited in them.

While this precise question has not been heretofore determined in this State, the principles applicable have often been announced.   As early as *Belt* v. *Marriott,* 9 Gill, 331, our predecessors quoted with approval from 2 *Starkie on Evidence,* 490, that, "In order to satisfy the statute, there must be a delivery of the goods with intent to vest the right of possession in the vendee, and there must be an actual acceptance by the latter, with intent to take possession as owner,"   In *Jones &*

*Co.* v. *Mechanics' Bank*, 29 Md. 287, we repeated that, and said that "Whilst there can be no acceptance under the statute without delivery by the seller, yet there must be both delivery and acceptance in order to sustain an action upon the contract." It was held in that case "That the mere designation of a carrier by the vendee, and delivery of the goods to, and receipt of them by him as carrier, does not operate such acceptance and receipt as the statute requires," and that the fact that the purchaser sold, or offered to sell, the goods in anticipation of their arrival did not amount to such assumption of authority, or assertion of ownership over them, as to constitute an acceptance and receipt within the requirements of the statute. JUDGE MILLER said that, "In the earlier decisions slight acts were considered as sufficiently evidencing acceptance and receipt, but later cases are much more strict, evincing a commendable determination by the Courts to give full effect to the design and spirit as well as the letter of the statute." The Court also held in that case, as was done in this, that as there was no evidence from which a jury could properly draw the inference of such acceptance and receipt of the goods as the statute requires, a prayer was properly granted taking the case from the jury. In *Hewes & Co.* v. *Jordan*, 39 Md. 472, we held there was sufficient evidence on the subject to go to the jury, but there the purchasers not only had the opportunity to inspect the grease purchased, but gave a written order to the vendor to deliver it to a drayman by whom it was taken to the store of the purchasers and there received. In that case JUDGE ALVEY pointed out with his usual clearness the distinction between an acceptance and a receipt, and showed that both were necessary, "with the intention of the parties that the vendee shall take possession of the goods under the contract as owner." The same doctrine was announced in *Cooney & Co.* v. *Hax & Co.*, 92 Md. 134, and *Corbett* v. *Wolford*, 84 Md. 426.

It will be seen that there is not only nothing in this State which in any way conflicts with the doctrine announced by other Courts, as above stated, but on the contrary our decis-

ions are in exact accord with it. For after all the question is, whether anything has been done which shows, or from which it can be fairly inferred, that the parties intended to vest the right of possession in the vendee and that he received and accepted the goods with intent to take possession as owner— that is to say, either all or some portion *of the goods purchased*, not some other goods which were not included in the sale. The statute itself says, *"part of the goods so sold,"* and does not mean a sample which is merely used for the purpose of showing the quality, etc., of the goods which are offered for sale, but which is not itself to be sold.

Another reason assigned by the appellees strengthens their position. The appellant was very emphatic in his statement that he refused to ship the tomatoes in any way other than what we have stated—f. o. b. Aberdeen sight draft bill of lading attached," and that Mr. Smith agreed to that. The appellant refused to deviate from these terms the next day, and that was the cause of the refusal of the appellees to finally complete the bargain. He knew, as he testified, that the goods could not be delivered when shipped in that way until the draft was paid, and yet it is contended for him that Mr. Smith's taking the two cans, given him as samples, was an acceptance by and delivery to him of the whole. While it is true that there may be such an acceptance and receipt of *a part*, as will be a compliance with the Statute of Frauds as to *the whole* of the goods, it is difficult to understand how it can be said that these samples are to be taken as a symbolical delivery, acceptance and receipt of the goods bargained for, when the appellant announced as his *ultimatum* that he would sell the tomatoes on no other terms than that they should be paid for before delivery by taking up the draft with the bill of lading. The property, in goods shipped as these were to be, not only does not pass to the buyer until the draft is paid (*Hopkins* v. *Cowen*, 90 Md. 152), but when so shipped there is no such delivery as is necessary to comply with the Statute of Frauds as was expressly decided in *Fort Worth Co.* v. *Consumers' Co.*, 86 Md. 635. If therefore it be conceded that there may be

cases in which it may be a compliance with the Statute of Frauds for the vendor to deliver, and the purchaser to accept and receive a sample, although all the rest of the goods are shipped with a draft attached to the bill of lading, which is only to be surrendered on payment of draft, there must at least be some evidence of an intention, on the part of both vendor and vendee, that the sample shall have such effect. There is no such evidence in this case and hence we do not deem it necessary to pursue that question further, or to determine what the law would be, if there was.

So without extending this decision further, we are of the opinion that the appellant was not entitled to recover, and the judgment will be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*