# CLIFTON L. JARRELL vs. YOUNG, SMYTH, FIELD CO.

*Sale of Goods—Acceptance and Receipt Under the Statute of Frauds—Intention of Buyer—Evidence.*

To constitute a valid sale of goods under the 17th section of the Statute of Frauds, by acceptance and receipt, there must be a delivery of the goods with intent to vest the right of possession in the buyer and an actual acceptance by the latter with the intention to take possession as owner.

In compliance with an oral order by defendant, certain goods were shipped to him. Without taking them from the railway station, the defendant shipped the goods back, paying the freight both ways and wrote to the seller that he was going out of business and returned the goods as shipped. *Held,* that in an action for the price, the defendant was entitled to have the jury instructed that in order to recover it was necessary for the plaintiff to prove that the defendant intended to receive the goods sued for and to accept the same as owner; and that an instruction that the defendant was liable if he received and accepted the goods, was not sufficiently specific as to what would be a receipt and acceptance under the statute.

Delivery of goods sold to a carrier and the payment of freight by the buyer, do not constitute acceptance and receipt under the Statute of Frauds.

When the question is whether a buyer has received and accepted goods under the Statute of Frauds which he reshipped to the seller, the intention with which the buyer acted is material, and he may testify as to whether he intended to receive and accept the goods as owner.

*Decided March 1st, 1907.*

Appeal from the Circuit Court for Kent County (PEARCE, C. J., and CROTHERS and ADKINS, JJ.)

The cause was argued before BRISCOE, BOYD, SCHMUCKER and BURKE, JJ.

*Hope H. Barroll* and *James P. Gorter,* for the appellant.

*Lewin W. Wickes,* for the appellee.

BOYD J., delivered the opinion of the Court.

The appellant who was a merchant at Chestertown gave the appellee's agent a verbal order for some articles of merchandise, which the appellee claims were to be shipped to him on March 10th, 1906, while the appellant contends that they were not to be shipped until the 15th of that month, and that he could in the meantime countermand the order. No payment was made on them by the appellant, and there being no memorandum in writing signed by him, the real question at the trial below was whether there was such acceptance and receipt of them as complied with the requirements of the 17th section of the Statute of Frauds. A verdict was rendered in favor of the plaintiff (appellee) and this appeal is from the judgment entered thereon.

A prayer was offered at the close of the plaintiff's case, seeking to take the case from the jury, but when that was rejected, the defendant called a witness and proceeded with his case. The exception taken to the rejection of that prayer was thereby waived and is not before us for review. *Barabasz* v. *Kabat*, 91 Md. 53, and other cases since decided.

The defendant's attorney called the defendant and asked him the following question: "Did you at any time ever intend to receive and accept as owner these goods after you were notified of their receipt at the railroad?" The Court sustained an objection to that question, and its ruling is presented by the second bill of exceptions. The third bill of exceptions embraces the rulings on the prayers. Exceptions were taken to the Court's action in granting the plaintiff's second prayer and rejecting the defendant's fifth and modifying his first, offered at the end of the case. It will be convenient to first consider the rulings on the prayers.

The appellant not having done anything from which it can be claimed that the 17th section of the Statute of Frauds had in other respects been complied with, the question was whether he did "accept part of the goods so sold and actually receive the same," to use the language of the Statute. The goods were shipped to the appellant at Chestertown from Phila-

delphia, on the 10th of March, and were received at the rail-road station on the 12th of that month. A carter who hauled for the appellant went to the station to get them, but the appellant sent word to him not to take them, that he did not want them. The appellant paid the freight both ways, and reshipped the goods to the appellee, and on that day (March 16th) signed a shipping order and wrote a letter to the appellee. The letter stated he was returning the goods and asked the appellee to take them back, as he had disposed of his stock and mercantile business; that "the goods were not opened and go back as they were shipped, freight paid." The appellee replied on April 10th, but declined to accept the goods, as they had reason to believe he was still in business. On April 20th they were received by the railroad company from Easton, Md., they having been shipped there by mistake and then forwarded to Chestertown where they still remain, at the depot. The carter paid the railroad company the freight but when the appellant notified him not to take the goods the company refunded the amount. There were some expressions in the letters of the appellant which might have led the jury to believe that he had accepted the goods, although they were not instructed as to what was a sufficient acceptance to comply with the Statute of Frauds.

It was important for them to be so instructed, in order that they could understand what was necessary to show an acceptance within the meaning of the law. The defendant's first prayer, as offered, and the Court's instruction, in lieu of it, will be considered before referring to the plaintiff's prayer which was granted, as the theory of the appellant is thereby distinctly presented. After asking the Court to say there was no sufficient memorandum in writing to evidence the sale of the goods sued for, the defendant's prayer proceeded; "and in order for the plaintiff to recover in this cause it is necessary for the plaintiff to establish by a preponderance of evidence to the satisfaction of the jury *that the defendant intended to receive the goods sued for and to accept the same as owner.*" The Court's instruction used the language of that prayer to and

including the words "preponderance of evidence," and in place of the rest of it substituted the words *"that the defendant received and accepted said goods."* We will italicise the parts of the two which differ. Under the circumstances of the case, which we have sufficiently stated, it would seem to be clear that the instruction of the Court was not as specific, as to acceptance and receipt, as the defendant was entitled to. The fact that the defendant did pay the freight from and to Philadelphia, and did give the shipping order for the goods to be returned, together with other facts we have mentioned, might have led the jury to believe he had accepted and received the goods and they could not be presumed to know what sort of an acceptance or receipt was required to bind the defendant. As early as *Belt* v. *Marriott*, 9 Gill, 335, our predecessors quoted with approval from 2 *Starkie on Evidence*, 490, that "In order to satisfy the statute, there must be a delivery of the goods with intent to vest the right of possession in the vendee, and *there must be an actual acceptance by the latter, with intent to take possession as owner.*" That has been since followed a number of times in this Court. See *Jones* v. *Mechanics' Bank*, 29 Md. 293; *Hewes & Co.* v. *Jordan*, 39 Md. 479; *Corbett* v. *Wolford*, 84 Md. 429; *Cooney & Co.* v. *Hax & Co.*, 92 Md. 136, and *Richardson* v. *Smith*, 101 Md. 19. JUDGE MILLER, in *Jones* v. *Mechanics' Bank*, referred to the necessity of discrimination "between a sale at common law, which is consummated by delivery, and a sale as affected by this statute," and referred to the rule quoted in 9 Gill, 335, from *Starkie on Evidence* as being "very accurately stated." In *Hewes & Co.* v. *Jordan, supra*, JUDGE ALVEY discussed the question at length. He said "That the acceptance and actual receipt of the goods sold, or some part of them, by the vendee, to gratify the statute, must be *intended* by the parties to effect a final and complete change of property in the goods so actually received, under the contract, would seem to be clear." He quoted with approval from *Blackburn on Sales* that "it is immaterial whether his (buyer's) refusal to take the goods be reasonable or not. If he refuses the goods, assigning grounds

false or frivolous, or assigning no reasons at all, it is still clear that he does not accept the goods, and the question is not whether he *ought* to accept, but whether he *has* accepted them. The question of acceptance or not is a question as to what was the intention of the buyer, as signified by his outward acts." The third prayer offered by the defendant in that case, which this Court said should have been granted, concluded by saying "that in order to constitute an acceptance, so as to bring the case within the provisions of the Statute of Frauds, *there must have been an actual acceptance by the defendants, with an intention of taking possession as owners.*" That prayer is very similar, in its effect, to the one under consideration, which we think the defendant was entitled to have granted. The delivery of the goods to the carrier and receipt of them by it as carrier did not operate as such acceptance and receipt as the statute requires, *Jones & Co.* v. *Mechanics' Bank, supra,* nor did the payment of freight by him, 29 *Am. & Eng. Ency. of Law,* 983. The fifth prayer ought also to have been granted. The fact that the defendant's third, which was granted, concludes by saying, "and if the jury shall further find that the defendant did not at any time receive and accept said goods *as owner,* then the verdict of the jury must be for the defendant" did not correct the error in rejecting the first and fifth. That prayer presented the defendant's theory that it was a conditional sale, that if he did not need the goods, he could countermand the order, and the appellant could not have had advantage of that prayer, unless the jury found those facts in his favor. It follows from what we have already said that the plaintiff's prayer should have been rejected, as on that question, it simply left to the jury to find whether "the said goods were accepted and received by the defendant," without in any way instructing them what those terms meant. Under the circumstances, that was not sufficient and was too general.

(2.) It only remains to determine whether the Court should have allowed the defendant to answer the question stated in the second bill of exceptions. There can be no doubt that

the intent of the buyer is material and relevant in a case of this kind, as is shown by the cases above cited. The only question is whether the buyer can testify to his own intent. We do not see any valid reason for excluding such evidence. It is, of course, not conclusive, but the opposite party can prove such facts and circumstances as he can obtain, which reflect upon the question. It might be that a purchaser might do some act which would be conclusive of his intention, as to the question whether there has been such an acceptance and receipt as complies with the requirements of the Statute of Frauds. The Court could then instruct the jury that if they found that the purchaser had done such acts, the statute was complied with, and the mere fact that the purchaser would swear he did not intend thereby to become the owner of the goods would not relieve him. As said in 29 *Am & Eng. Ency. of Law*, 982, "Acts of ownership consistently only with the intent to keep the property are often sufficient and sometimes conclusive evidence of acceptance," but in a case like this the intention of the appellant, in doing what it was proven he did, was very material and he should have been permitted to testify to it.

The subject of permitting a party to a suit to testify as to his intention is fully and ably considered in 1 *Wigmore on Evidence*, sect. 581. The author mentions as one argument which is urged against its admissibility, that "such testimony may be falsified without the possibility of detection and that therefore it is dangerous to permit an interested person to allege, in effect, whatever he pleases in his own state of mind." He then proceeds to give some answers to the argument, amongst others that the "assumption is incorrect in fact, namely, that there is no other available and sufficient evidence of intent or motive by which the person's own testimony can be tested and checked; for the evidence from conduct and circumstances and from other testimony is not only a permissible but a potent source of belief, and is amply sufficient to guard against falsifications." He quotes in the text from cases in New York, Vermont, Indiana and California and cites, in

over four pages of notes, numerous cases where such testimony was held admissible—briefly stating the character of each case.

The decisions in this State are not opposed to the views of. that author, in so far as the question has arisen.   In *Friend* v. *Hamill*, 34 Md. 307, an action was brought by the appellee against the appellants, who were judges of election, to recover damages for refusing to allow him to vote at an election.   They were permitted to testify to their own intentions and motives at the time they acted.   In *Phelps* v. *G. & C. R. R. Co.*, 60 Md. 536, which was an action of deceit, the president and engineer were allowed to testify as to their intentions in doing certain acts and making certain statements.   The Court said "We think the weight of authority to be, that where the fact to be established is the intention with which an act has been done, to which act as matter of law no conclusive presumption attaches, as for instance the intention of a party in determining his place of residence, the party whose intention is the subject of inquiry may testify to the nature of his intention as he might to any other material fact.   As we have intimated, what credit is to be given the testimony of the witness on this point is for the jury to determine, looking to all the evidence in the cause." In *Fenwick* v. *State*, 63 Md. 239, the Court held that it was competent for a person on trial for assault with intent to murder to testify as to the purposes for which he procured the instrument with which he committed the assault.   See also *Roddy* v. *Finnegan*, 43 Md. 501, and *Gambrill* v. *Schooley*, 95 Md. 260.

Such cases as *Lineweaver* v. *Slagle*, 64 Md. 465, and *Ecker* v. *McAllister*, 45 Md. 309, cited by appellee do not in any way conflict with the general doctrine.   As was said in the first of those cases "Where the law imputes an intent from the acts done by a party, his testimony as to what his intention was in doing the acts, cannot be received in evidence," referring to *Ecker* v. *McAllister*, in which case the Court went on to say: "Every person of sound mind is presumed to intend the necessary natural or legal consequences of his deliberate act 'This legal presumption may be either conclusive or disput-

able, depending upon the nature of the act and the character of the intention. And when, by law, the consequences must necessarily follow the act done, the presumption is ordinarily conclusive, and cannot be rebutted by any evidence of a want of such intention.' " Such a case as this is altogether different. As we have seen, there must be an actual acceptance of goods by the purchaser, with intent to take possession as owner, in order to comply with the statute, and hence it becomes material to ascertain his intention. As we have indicated, there may be acts done which would be conclusive of his intent, but in this case the appellant's theory is that he only accepted the goods, in so far as there was any acceptance, for the purpose of reshipping them to the appellee, and not for the purpose of taking possession as owner. Of course the appellee would not have been concluded by his answer, but could have cross-examined him, and relied on such facts as tended to show that he did take possession, as owner. Oftentimes the circumstances might be such as it would be important to explain the purpose of a purchaser in doing what was claimed to be evidence of acceptance, and, inasmuch as parties are now authorized to testified in their own behalf (unless, of course, there be some statutory disqualificatton), the purposes of justices may require that he be permitted to testify 'as to his intention. We are of the opinion that the appellant should have been allowed to so testify.

It follows from what we have said that the judgment must be reversed.

> *Judgment reversed and new trial awarded, the appellee to pay the costs.*