BRUCE WORTHINGTON, Trading as Interstate Fruit Product Company,

*vs.*

HARRY LIPSITZ, MORRIS LIPSITZ and BARNEY LIPSITZ, Trading as H. Lipsitz and Sons.

*Witnesses: examination of—; impressions. Sale of goods: delivery.*

In general, witnesses should not be questioned as to their impressions, but only as to facts and circumstances as to which they are competent to speak. p. 255

Under the Uniform Sales Act, section 25 of Article 83 of the Code, in order to sustain an action upon a contract for the sale of goods, there must be an acceptance as well as delivery.

p. 256

*Decided June 28th, 1917.*

Appeal from the Court of Common Pleas of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Lewis W. Lake,* for the appellant.

*Louis S. Ashman,* for the appellees.

BRISCOE, J., delivered the opinion of the Court.

This suit was brought in the Court of Common Pleas of Baltimore City to recover for a carload of cider, containing seventy barrels, valued at $476.84.

The plaintiff is a manufacturer and broker of ciders, vinegars and fruit products, trading under the name of the Interstate Fruit Product Company, with business offices in Baltimore City.

The defendants are co-partners trading as H. Lipsitz and Company, and engaged in business in Baltimore City.

The suit is in assumpsit on an oral contract for the purchase price of the cider and the declaration contains the common counts.

The case was tried upon issues joined on the pleas of "never indebted" and "never promised as alleged" and from a judgment in favor of the defendant, the plaintiff has appealed.

In the course of the trial, the plaintiff reserved two exceptions, one to the ruling of the Court upon testimony, and the second, to the granting, at the conclusion of the plaintiff's evidence, of the defendants' prayers, marked A, B and C.

There was clearly no error in the ruling of the Court upon the first exception. The witness Nowlin testified that he saw the bill of lading at the plaintiff's office on Tuesday the 19th of December, 1916, and that he had seen the defendants on a number of occasions, that nothing was said to indicate that they desired to repudiate the sale, and that one of the brothers made the remark, "that cider is a long time getting here. The cider season will be over by the time it gets here," or something of that kind. He was then asked, "What was the impression they left you under, if any? The question was objected to by the defendant and the objection was sustained.

The question was not a proper one and the impression of the witness was clearly inadmissible. It was not the opinion or impression of the witness, but the facts and circumstances and the conduct of the parties that he was called upon to give in evidence and of which he was competent to speak.

The principal and second question presented by the record for review, is whether the rulings of the Court upon the defendants' prayers were correct, and that is, whether there was any evidence legally sufficient, under the pleadings, of any valid contract between the plaintiff and the defendants for the purchase of the goods alleged to have been sold.

There can be no great difficulty we think, in regard to the well settled principles of law by which the several questions presented by the prayers are to be determined.

The controverted question in the case, is whether there was a sufficient receipt and acceptance of the goods sold under the verbal contract, as to constitute a valid and binding sale, under the statute, and this, of course must depend upon the facts and circumstances disclosed by the record in the case.

By section 25 of Article 83 of the Code (1910, Chapter 346), it is provided that: "A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upward shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf. (3) There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

And by section 68 of the same Article it is further provided: "(1) Where goods are delivered to the buyer, which he has not previously examined, he is not deemed to have accepted them unless and until he has a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract."

What will constitute an acceptance and receipt so as to gratify the statute, has been frequently considered and determined by this Court, in cases under the 17th section of the

*Statute of Frauds,* where the words of the statute are in sub-stance the same.  (29 Car. II, Cap. 3, sec. 17.)

In *Belt* v. *Marriott,* 9 Gill, 335, it is said, in order to satisfy the statute there must be a delivery of the goods with intent to vest the right of possession in the vendee and there must be an actual acceptance by the latter with intent to take possession.

In *Jones* v. *Mechanics Bank,* 29 Md. 287, JUDGE MILLER said, the statute does not speak of delivery, but superadds to the delivery which the common law requires, acceptance of the goods, or some part of them by the purchaser.  It confers upon the buyer alone the privilege to prevent a consumma-tion of the contract by refusing to accept and receive the goods.  While there can be no acceptance under the statute without delivery by the seller yet there must be both delivery and acceptance in order to sustain an action upon the con-tract.  *Belt* v. *Marriott,* 9 Gill, 335; *Hewes* v. *Jordan,* 39 Md. 480; *Richardson* v. *Smith,* 101 Md. 20; *Cooney & Co.* v. *Hax & Co.,* 92 Md. 137; *Jarrell* v. *Young,* 105 Md. 282.

The facts of the case, as presented by the record, are these: On or about the 21st of November, 1916, the defendants verbally agreed to buy from the plaintiff 70 barrels of cider, containing 3,406 gallons, at 14 cents per gallon, valued at $476.84.  On the 9th of December, 1916, the factory deliv-ered it to the Cumberland Valley railroad, at Winchester, Virginia, consigned to the defendants.  The bill of lading was mailed to the plaintiff, who received it in Baltimore on the 11th of December, 1916, and was mailed with an invoice to the defendants on the same day.  The bill of lading is as follows:

"Cumberland Valley Railroad Company—Straight bill of lading—original—not negotiable.  Consigned to H. Lipsitz & Sons, Baltimore, Maryland."

"Car initial, P. L., car number 535951, 70 bbls. pure apple cider, dated December 9, 1916.  Signed: H. W. Hamberger, Agent."

The witness Kirk, an employee in the general agents department of the Pennsylvania Railroad, at Bolton Station, Baltimore, testified, that the bill of lading on its face shows a certain car, which car arrived at 3:50 o'clock A. M. in the Bolton yard on the 18th of December, 1916, and that the witness had a personal recollection of that car and of telephoning to H. Lipsitz & Sons on the same date at eleven o'clock A. M., advising them that the car had arrived. That the car came from Winchester over the Cumberland Valley Railroad to Le Moyne, a station just this side of the river crossing at Harrisburg, where it is placed in a yard and turned over to the Pennsylvania Railroad, where it is there picked up by them and brought to Baltimore. That the time taken by the car from Winchester, Virginia, to the Bolton yards was normal. The witness stated that it is necessary to produce the bill of lading and arrival notice properly endorsed on the back, as per instructions on arrival notice to obtain goods from railroad. The following is an abstract from notice received by defendants:

"The articles described below have been received consigned to you, and are now ready for delivery on payment of charges due thereon. Please send for same immediately and present this notice and bill of lading, when freight is called for. If not called for in person, fill out order for delivery on back thereof.

No. Packages, 170. Description of articles and special remarks, Brls. Vinegar."

That the car containing the cider or vinegar was eventually sent to the Terminal Warehouse, that when he called up the defendants, he gave them vinegar as the lading of the car.

The witness Nowlin testified that he called upon the defendants on December 16th, to collect the bill for the cider and was informed by a member of the firm, that the car had not arrived and it would be too late to sell cider at the time the car got to Baltimore  The bill of lading was returned to the plaintiff and received by him on the 19th of December, 1916.

While the proof shows that the defendants in this case verbally agreed to purchase the cider upon certain terms and conditions disclosed by the record, there is no evidence whatever, from which a jury would be warranted, to find an actual acceptance and a receipt of the cider sold by the verbal contract, as would gratify the plain provisions of the statute, and would constitute a valid and enforceable contract of sale.

On the contrary the proof tends to show that the defendants refused to accept and to receive the goods and the carload was sent to the Terminal Warehouse of the railroad company. *Cooney & Co.* v. *Hax & Co.,* 92 Md. 136.

It follows for the reasons stated that the Court committed no error in granting the defendants prayers, withdrawing the case from the consideration of the jury and the judgment will be affirmed.

*Judgment affirmed, with costs.*